DANIEL R. BROWN, JULIET E. WOOD and L. B. ADAMS, Appellants, v. A. R. COLE and A. A. COLE.

**Deeds:** MENTAL INCAPACITY: FRAUD: UNDUE INFLUENCE. In an action to set aside a deed on the ground of mental incapacity, the evidence is reviewed and held insufficient to establish incapacity, fraud, or undue influence.

*Appeal from Story District Court.*— HON. W. D. EVANS, Judge.

WEDNESDAY, MARCH 8, 1905.

ACTION to set aside a deed on the ground that it was procured by fraud, duress, and undue influence, and was without consideration, and that the grantor was mentally incompetent to execute a valid deed. Decree for defendants. Plaintiffs appeal.— *Affirmed.*

*E. H. Addison,* for appellants.

*Geo. W. Dyer* and *D. J. Vinje,* for appellees.

McCLAIN, J.— The deed to which this controversy relates describes a fractional quarter section of land on which the grantor, Daniel R. Brown, was residing at the time of the execution of the deed, and which had been the homestead of himself and wife — his wife being then recently deceased — for many years. In 1885 the grantor made his will, in which he devised another quarter section to Nathaniel A. Cole and wife, parents of the defendants in this action, subject to a life estate to his widow, should she survive him, and subject also to the obligation to take good care of testator and his wife as long as either of them should live. The fractional quarter described in the subsequent conveyance was by the will devised, an undivided one-half to Daniel Brown, a nephew of testator, and an undivided one-fourth each to Julia E. Wood and L. B. Adams, nephews of testator's wife. The grantees in the deed in question are grandnephews of testator's wife, their mother being a sister of Mrs. Wood. The effect of the conveyance, which was made in 1901, was to defeat the devise of the fractional quarter section to plaintiffs, and they seek to have the conveyance set aside.

The evidence for plaintiffs tends to show that at the time the conveyance was executed the grantor was about eighty years of age, and had been for twenty years very much crippled by rheumatism, so that he was quite helpless, and for much of the time was confined not only to the house, but to his bed, and that his infirmities had increased, especially after the death of his wife. But it also appears that while in this crippled condition he had been able to transact business, and had been a man of strength of character, intelligence, and self-reliance. There is nothing in the record to indicate any change in his mental capacity, notwithstand-

ing the increased frailty of his health, due to his physical
incapacity and advancing years.    In short, there is no evi-
dence such as to satisfy us that he had not sufficient mental
capacity to execute a valid conveyance.

For some years prior to the execution of the deed,
Nathaniel Cole and his wife — the later being, as already
indicated, the niece of grantor's wife — had resided in a
separate house in the same yard with the house in which
grantor and his wife had lived; the Coles having three chil-
dren, of whom the defendants are two.    And the evidence
tends to show that grantor and his wife and the Cole family
practically lived together — at any rate, to this extent: that
the members of the Cole family, and especially the two de-
fendants, looked after and cared for the grantor and his
wife, and the grantor after the death of his wife; and on
this relationship is predicated the claim of undue influence.
But it is to be noticed that, whatever may have been the re-
lations between the grantor and Nathaniel Cole and his wife,
there is no evidence of such relation between these defendants
and the grantor as to give rise to any confidential relations
from which a presumption of undue influence could rise; and
there is absolutely no evidence that any influence was
actually exerted by any member of the Cole family to secure
the making of this conveyance.    So far as it appears, it was
voluntarily and freely made.    Nor is it entirely without con-
sideration.    The deed recites a consideration of $660, and,
while the testimony tends to show that no money considera-
tion was actually paid, it does not negative a consideration
in services which the defendants may have rendered to the
grantor in carrying on the farm.    They were not members
of his family, but of the family of their parents; and, if they
rendered valuable services for him, even without express
contract, there would be an implied obligation to make com-
pensation.    One of the witnesses for plaintiffs testifies that
the Coles lived on the farm of grantor as renters.    More-
over, the deed is on condition that grantor retains a life

lease on the premises, and that one year after his death the grantees shall pay to Juliet E. Wood and L. B. Adams, each, the sum of $165.

In the absence of any evidence of fraud or undue influence, we have no ground presented to us which would warrant or require the setting aside of this deed, and the decree of the lower court in favor of defendants is therefore *affirmed.*